IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

UNITED STATES OF AMERICA, )
)
and )
)
THE STATE OF VERMONT )
)
     Plaintiffs, )
)
v. )
)
VERMONT ASBESTOS GROUP, Inc. )
)
)
     Defendant. )
)

2:13-cv-238

Civil Action No. _____
CONSENT DECREE

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | BACKGROUND | 1 |
| II. | JURISDICTION | 2 |
| III. | PARTIES BOUND | 2 |
| IV. | DEFINITIONS | 2 |
| V. | STATEMENT OF PURPOSE | 6 |
| VI. | CONFESSION AND SATISFACTION OF JUDGMENT | 6 |
| VII. | REIMBURSEMENT OF RESPONSE COSTS | 7 |
| VIII. | OPERATION AND MAINTENANCE | 9 |
| IX. | DESIGNATION AND AUTHORITY OF STATE PROJECT MANAGER | 10 |
| X. | ACCESS AND INSTITUTIONAL CONTROLS | 11 |
| XI. | FAILURE TO COMPLY WITH CONSENT DECREE | 14 |
| XII. | CERTIFICATION | 17 |
| XIII. | COVENANTS NOT TO SUE BY UNITED STATES AND THE STATE | 18 |
| XIV. | RESERVATION OF RIGHTS BY UNITED STATES AND THE STATE | 18 |
| XV. | COVENANT NOT TO SUE BY SETTLING DEFENDANT | 20 |
| XVI. | EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION | 21 |
| XVII. | RETENTION OF RECORDS | 22 |
| XVIII. | NOTICES AND SUBMISSIONS | 23 |
| XIX. | RETENTION OF JURISDICTION | 24 |
| XX. | INTEGRATION/APPENDICES | 24 |
| XXI. | MODIFICATION | 24 |
| XXII. | LODGING AND OPPORTUNITY FOR PUBLIC COMMENT | 25 |
| XXIII. | SIGNATORIES/SERVICE | 25 |
| XXIV. | FINAL JUDGMENT | 25 |

# I.    BACKGROUND

A.  The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), concurrent with the lodging of this Consent Decree, filed a complaint against the Vermont Asbestos Group, Inc. ("Vermont Asbestos Group" or "VAG") in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9606 and 9607, as amended ("CERCLA"), seeking action to address the release or threatened release of hazardous substances related to the Vermont Asbestos Group Mine Site in the Towns of Eden and Lowell, Vermont ("the Site") and reimbursement of response costs incurred or to be incurred for response actions taken or to be taken at or in connection with the Site.

B.  On August 12, 2008, the State of Vermont Agency of Natural Resources, by and through the Attorney General, William H. Sorrell, brought a civil action against the Vermont Asbestos Group in Vermont Superior Court for abatement, cleanup of hazardous waste and water pollution, cost recovery, civil environmental penalties and for injury to public property pursuant to Title 10 of the Vermont Statutes Annotated, including Chapter 159, Waste Management and Chapter 47, Water Pollution Control, and the common law and the general equitable jurisdiction of the court. *State of Vermont, Agency of Natural Resources v. Vermont Asbestos Group, Inc.,* Docket No. 532-8-08 Wncv.  The State has also filed a complaint against Vermont Asbestos Group in this Court pursuant to Section 107 of CERCLA seeking reimbursement of response costs incurred or to be incurred for response actions taken or to be taken at or in connection with the Site, and certain appended claims that it brought against Vermont Asbestos Group in *State of Vermont, Agency of Natural Resources v. Vermont Asbestos Group, Inc.,* Docket No. 532-8-08 Wncv.

C.  In performing response actions related to the Site, both the United States and the State (collectively "Plaintiffs") have incurred and will continue to incur response costs.

D.  The United States alleges that Vermont Asbestos Group ("Settling Defendant"), is a liable person pursuant to Sections 101(21) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(21) and 9607(a), and jointly and severally liable for response costs incurred and to be incurred at the Site.

E.  The State alleges that Vermont Asbestos Group is a liable party pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) and 10 V.S.A. § 6615.

F.  The United States and the State have reviewed the Financial Information submitted by Settling Defendant to determine whether it is financially able to pay response costs incurred and to be incurred at the Site.  Based upon this Financial Information, the United States has determined that Settling Defendant has a limited financial ability to pay for response costs incurred and to be incurred, and the State concurs in this determination.

G.  EPA incurred approximately $4.1 million in response costs at the Site as of September 18, 2012.  As of February 1, 2013, EPA has received $674,200, as reimbursement for Site costs

1

pursuant to a settlement agreement with G-I Holdings, Inc., the successor to a prior owner of the Site. EPA expects an additional future payment in the amount of $57,800 from G-I Holdings, Inc. pursuant to the settlement agreement as reimbursement for Site costs. After this payment, EPA's unreimbursed costs are anticipated to be $3,360,082.60.

H.   The State incurred approximately $461,420 in response costs at the Site as of September 30, 2012.  As of February 1, 2013, the State has received $286,800 in reimbursement pursuant to a settlement agreement with G-I Holdings, Inc.  The State's total unreimbursed costs at the Site are approximately $174,620.  Based upon current information, the State estimates that it will incur at least $28,000,000 in future response costs at the Site.

I.   Settling Defendant does not admit any liability to Plaintiffs arising out of the transactions or occurrences alleged in the complaints.

J.  The Plaintiffs and Settling Defendant ("the Parties") agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, with the consent of the Parties to this Consent Decree, it is ORDERED, ADJUDGED, AND DECREED:

## II.   JURISDICTION

1.   This Court has jurisdiction over the subject matter of these actions pursuant to 28 U.S.C. §§ 1331, 1367 and 1345, and 42 U.S.C. §§ 9607 and 9613(b), and also has personal jurisdiction over Settling Defendant.

2.   Settling Defendant consents to and shall not challenge entry of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.   PARTIES BOUND

3.   This Consent Decree is binding upon Plaintiffs and Settling Defendant and their successors and assigns.  Any change in ownership or corporate or other legal status, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of Settling Defendant under this Consent Decree.

## IV.   DEFINITIONS

4.   Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or in any appendix attached hereto, the following definitions shall apply:

2

a.     "ANR" shall mean the State of Vermont Agency of Natural Resources, including the Vermont Department of Environmental Conservation and any successor departments, agencies or instrumentalities of the State.

b.     "ANR Activities" shall mean all actions performed by ANR necessary to oversee Settling Defendant's operation and maintenance of the EPA Removal Structures (defined below) as provided for in Section VIII (Operation and Maintenance) of this Consent Decree and all actions performed by ANR necessary for operation and maintenance of the EPA Removal Structures.

c.     "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601, *et seq.*

d.     "Consent Decree" shall mean this Consent Decree and all appendices attached hereto.  In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

e.     "Day" shall mean a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

f.     "DOJ" shall mean the United States Department of Justice and any successor departments, agencies, or instrumentalities of the United States.

g.     "Effective Date" shall mean the date upon which this Consent Decree is entered, or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

h.     "EPA" shall mean the United States Environmental Protection Agency and any successor departments, agencies or instrumentalities of the United States.

i.     "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

j.     "EPA Removal Structures" shall mean the sedimentation basins, storage area, berms, or other structures installed as part of the Mine Site Removal Action.

k.     "EPA Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through September 18, 2012, plus any applicable Interest on all such costs through such date.

l.     "Financial Information" shall mean the financial information submitted by Settling Defendant to EPA, an index of which is included in Appendix B to this Consent Decree.

3

m.       "G-I" shall mean G-I Holdings, Inc. and any authorized representatives of G-I Holdings, Inc.

n.       "G-I Trustee" shall mean the trustee, appointed by G-I Holdings, Inc. pursuant to the consent decree entered in the case captioned United States et al. v. G-I Holdings, Inc., et al., Adversary Proceeding No. 08-2531 (RG) (D.N.J. Bankr.).

o.       "G-I Work" shall mean the injunctive relief activities required under the consent decree entered in the case captioned United States et al. v. G-I Holdings, Inc., et al., Adversary Proceeding No. 08-2531 (RG) (D.N.J. Bankr.) and all attachments to that consent decree.

p.       "Institutional Controls" or "ICs" shall mean Proprietary Controls and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land, water, and/or resource use to minimize the potential for human exposure to Waste Material at or in connection with the Site; (b) limit land, water, and/or resource use to implement, ensure non-interference with, or ensure the protectiveness of the response actions; and/or (c) provide information intended to modify or guide human behavior at or in connection with the Site.

q.       "Insurance Policies" shall mean any liability or indemnity insurance policies issued to or for the benefit of Settling Defendant, its employees, its officers and directors, or any predecessor or successor in interest, or affiliate to Settling Defendant, including all policies for which Settling Defendant or its predecessor, successor, or affiliate is an "insured," "named insured," or "additional insured," and including all policies for primary, excess, pollution legal liability, and environmental impairment liability. This includes, but is not limited to, the list of insurance policy numbers included in Appendix C to this Consent Decree.

r.       "Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).   The applicable rate of interest shall be the rate in effect at the time the interest accrues.   The rate of interest is subject to change on October 1 of each year.

s.       "Mine Site Removal Action" shall mean all activities undertaken by the United States and the State as part of the 2007 through 2008 EPA removal action at the Site.

t.       "Operation and Maintenance" shall mean all activities that Settling Defendant is required to perform under this Consent Decree as set forth in Section VIII (Operation and Maintenance) and Appendix D (Operation and Maintenance Plan).

4

u.      "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

v.      "Parties" shall mean the United States, the State of Vermont, and the Vermont Asbestos Group.

w.      "Plaintiffs" shall mean the United States and the State of Vermont.

x.      "Property" shall mean the portion of the Site owned by Settling Defendant including any contiguous land acquired by VAG after lodging this Consent Decree.

y.      "Proprietary Controls" shall mean easements or covenants running with the land that (a) limit land, water, or resource use and/or provide access rights and (b) are created pursuant to common law or statutory law by an instrument that is recorded by the owner in the appropriate land records office.

z.      "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

aa.     "Settling Defendant" shall mean the Vermont Asbestos Group, Inc.

bb.     "Site" shall mean the Vermont Asbestos Group Mine Site, which is located in the Towns of Eden and Lowell, Vermont and encompasses approximately 1,673 acres including all areas where mining and milling activities took place, and surrounding property where any hazardous substances originating at the mine have been deposited, stored, disposed of, placed, or otherwise become located, as generally depicted on the VAG Site Map, included in Appendix A.  The Site shall also include any adjacent land owned by Leonard P. Prive in Eden, Vermont that has been or will be acquired by Settling Defendant that contains hazardous substances originating from the mine.

cc.     "State" shall mean the State of Vermont, including its departments, agencies and instrumentalities.

dd.     "State Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the State of Vermont incurs at or in connection with the Site after September 30, 2012.

ee.     "State Past Response Costs" shall mean all costs, including, but not limited to direct and indirect costs, that the State of Vermont has incurred at or in connection with the Site through September 30, 2012 plus Interest on all such costs through such date.

ff.     "United States" shall mean the United States of America, including its departments, agencies and instrumentalities.

gg.    "VAG" and "Vermont Asbestos Group" shall mean the Vermont Asbestos Group, Inc.

hh.    "Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C.§ 6903(27) and 10 V.S.A. § 6602(2); and (4) any "hazardous material" under 10 V.S.A. § 6602(16).

## V.    STATEMENT OF PURPOSE

5.    By entering into this Consent Decree, the mutual objective of the Parties is to avoid litigation by requiring Settling Defendant (i) to use "best efforts" to obtain any available monetary indemnification or recovery from all applicable Insurance Policies and pay the United States and the State from such recoveries; (ii) to make cash payments to the State; (iii) perform Operation and Maintenance at the Site for a period of 10 years and maintain funding to ensure Operation and Maintenance can be performed; and (iv) to resolve its alleged civil liability as provided in the Covenants Not to Sue by United States and the State in Section XIII, and subject to the Reservations of Rights by United States and the State in Section XIV.

## VI.    CONFESSION AND SATISFACTION OF JUDGMENT

6.    Settling Defendant agrees and confesses to entry of a judgment in favor of the United States in the amount of $3,360,082.60 for EPA Past Response Costs and in favor of the State in the amount of $174,620 for State Past Response Costs. Settling Defendant agrees and confesses to entry of a judgment against itself and in favor of the State for State Future Response Costs estimated to be at least $28,458,399. This judgment shall remain in effect until Settling Defendant complies with all requirements in this Consent Decree. Such judgment shall be satisfied through (i) recovery of insurance proceeds from any Insurance Policies as specified in Paragraph 7 and (ii) cash payments by Settling Defendant as specified in Paragraph 13.

7.    Settling Defendant agrees to use "best efforts" to satisfy the foregoing judgment by obtaining any available indemnification or recovery from all applicable Insurance Policies held by VAG, its predecessors in interest, or affiliates. For the purposes of this subparagraph, "best efforts" includes cooperating with and assisting the United States and State in (i) asserting and pursuing claims for coverage under those policies and (ii) negotiating or litigating to obtain the most favorable resolution of claims under those policies as is reasonable.

8.    Settling Defendant shall submit any proposed settlement of insurance claims to the United States and the State for approval.

9.    Settling Defendant may retain from any insurance proceeds reasonable attorneys' fees they incur and pay after the Effective Date in pursuing claims against the applicable insurers, provided, however, that such attorneys' fees (i) shall not exceed five percent of the total monetary recovery from such party or parties, (ii) are substantiated in writing by Settling Defendant's

counsel to the United States and the State; and (iii) are confirmed in writing by the United States to be the correct amount prior to such disbursements.

10.     The amount remaining after such reasonable attorneys' fees have been deducted from the insurance recovery shall be paid consistent with the instructions in Paragraph 14 (Payment Instructions) and as follows:

     a.     For the Lexington Insurance Company and London Market policies, 55 percent to the United States and 45 percent to the State; and

     b.     For all other insurance policies, 50 percent to the United States and 50 percent to the State.

11.     Settling Defendant shall make all reasonable attempts to have the United States' and the State's portion of the insurance proceeds paid by the insurers directly to the United States and the State respectively.  If it is not practicable for the insurers to pay the United States or the State directly, then Settling Defendant shall arrange for insurance proceeds to be paid to Settling Defendant's counsel who will forward to the United States and the State their respective portions identified in the preceding paragraph within three days of receiving such proceeds.

12.     Settling Defendant consents to the filing by the United States and the State in the Recorder's Office in the Towns of Eden and Lowell, Vermont, as applicable, of notices o f judgment liens regarding the mine Property and the buildings owne d by Settling Defendant located at 230 Wilkins Street, Morrisville, Vermont based on the respective judgments in favor of the United States and the State.  The amount of the United States' Judgment Lien shall be $3,360,082.60.  The amount of the State's Judgment Lien shall be $28,458,399.

VII.     REIMBURSEMENT OF RESPONSE COSTS

13.     <u>Cash Payments.</u>

     a.     Within 30 days of entry of this Consent Decree, Settling Defendant shall pay to the State $5,000.  Additional payments of $5,000 shall be made annually for nine years thereafter on the anniversary of the date the first payment is made.

     b.     Additional cash payments shall be made to the United States and the State from any insurance proceeds recovered pursuant to Paragraphs 6-11 and shall be paid in accordance with Paragraph 14.

14.     <u>Payment Instructions.</u>

     a.     All payments to the United States shall be made at https://www.pay.gov to the Department of Justice account in accordance with instructions provided to Settling Defendant by the Financial Litigation Unit of the U.S. Attorney's Office in the District of Vermont following lodging of the Consent Decree.  The payment instructions provided by the Financial Litigation

7

Unit shall include a Consolidated Debt Collection System ("CDCS") number, which shall be used to identify all payments required to be made in accordance with this Consent Decree.  All payments shall reference the CDCS Number, Site/Spill ID Number 01ED, and DOJ Case Number 90-11-3-07425/3.

> b.     At the time of each payment to the United States, Settling Defendant shall send notice that payment has been made to EPA and DOJ in accordance with Section XVIII (Notices and Submissions).  Settling Defendant shall also send such notice to the Regional Financial Management Officer and to EPA's Cincinnati Finance Center at the addresses specified below. Such notice shall reference the CDCS Number, Site/Spill ID# 01ED and the DOJ Case # 90-11-3-07425/3.

> As to the Regional Financial Management Officer:

> Shannon Schofield, Regional Financial Management Officer
> U.S. EPA Region 1
> Five Post Office Square, Suite 100
> Mailcode: OARM16-1
> Boston, MA  02109-3912

> As to EPA's Cincinnati Finance Center:

> U.S. Environmental Protection Agency
> Cincinnati Finance Center
> 26 Martin Luther King Dr.
> Cincinnati, Ohio  45268
> Email: acctsreceivable.cinwd@epa.gov

> c.     The total amount of each payment paid to the United States pursuant to Section VI (Confession and Satisfaction of Judgment) and Paragraph 15 (Conveyance of the Property) shall either be deposited in the Vermont Asbestos Group Superfund Site Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or deposited in the EPA Hazardous Substance Superfund.

> d.     Payments to the State shall be made by official bank check made payable to "State of Vermont – Environmental Cleanup Fund," referencing the name and address of the party making the payment, and the Site No. 1995-1825.  The check shall be sent to:

> John Schmeltzer, Environmental Analyst
> Vermont Agency of Natural Resources Department of Environmental Conservation
> Waste Management and Prevention Division
> 1 National Life Dr - Davis 1
> Montpelier, VT 05620-3704

e.     The total amount of each payment paid to the State pursuant shall be deposited in the Department of Environmental Conservation Miscellaneous Settlements Fund Vermont Asbestos Group Mine Site Account, which shall be used solely for costs associated with the Vermont Asbestos Group Mine Site and for no other purpose.

15.     <u>Conveyance of the Property.</u>

a.     Any sale, lease, or other transfer (collectively, "Conveyance") of the Property, including any portion thereof or interest therein, (including any timber, educational, mineral, or recreational interest) must be approved by EPA in writing after a reasonable opportunity for review and comment by the State.

b.     Settling Defendant shall submit to EPA, at least 30 days prior to the date of the Conveyance of the Property, a notice of the Conveyance, Settling Defendant's calculation of the net Conveyance proceeds, and all documentation regarding the values used in the calculation, including: (i) copies of all documents to be executed regarding the Conveyance; (ii) documentation of the amounts of closing costs to be paid by each party to the Conveyance; (iii) documentation of any broker's fees regarding the Conveyance; and (iv) documentation of the amounts of state and/or municipal transfer taxes to be paid regarding the Conveyance. Settling Defendant may request that EPA approve the calculation of net Conveyance proceeds prior to the Conveyance.

c.     Settling Defendant shall retain $75,000 of Net Conveyance Proceeds from the first Conveyance of Property after entry of this Consent Decree by the Court. After the first Conveyance of Property, the following distribution of Net Conveyance Proceeds shall apply.   At the time of the receipt of the Net Conveyance Proceeds, Settling Defendant shall pay to the United States 45% and the State 45% of the Net Conveyance Proceeds of the Conveyance of the Property. "Net Conveyance Proceeds" shall mean, for purposes of this Paragraph, all monetary consideration received by Settling Defendant from the Conveyance of the Property, not including: (i) any reasonable closing costs paid by Settling Defendant regarding the Conveyance; (ii) any reasonable broker's fees paid by Settling Defendant regarding the sale; and (iii) any state and/or municipal transfer taxes regarding the Conveyance. Payment to EPA and the State shall be made in accordance with Paragraph 14 of this Consent Decree.

d.     Settling Defendant shall not convey any Property prior to executing and recording Propriety Controls as set forth in Paragraph 22(c) of this Consent Decree or prior to entry of this Consent Decree by the Court.

VIII.   OPERATION AND MAINTENANCE

16.     Pursuant to 10 V.S.A. Chapter 159, Settling Defendant shall perform for a period of ten years commencing on the Effective Date of this Consent Decree all actions necessary to implement the Operation and Maintenance Plan set forth in the April 10, 2009 letter from Gary Nolan to the State of Vermont Department of Environmental Conservation and the accompanying

chart that collectively constitute Appendix D of this Consent Decree and as may be modified at the direction of the Department of Environmental Conservation.

17.     Selection of Contractor for Operation and Maintenance.  Settling Defendant shall submit to the State the name(s), contact information, and qualifications of its selected Contractor(s) for Operation and Maintenance, and any subcontractor(s), within 30 days of the Effective Date.   Settling Defendant shall not retain such Contractor(s) for Operation and Maintenance without first receiving written approval from the State.

18.     The State retains the right to disapprove of the contractors and/or subcontractors to be retained by Settling Defendant.  If the State disapproves of a selected contractor, Settling Defendant shall submit to the State a different contractor for State approval, and shall notify the State of that contractor's name, contact information, and qualifications within 30 days of the disapproval.

19.     Selection of Project Coordinator for Operation and Maintenance.  Within 14 days after the Effective Date, Settling Defendant shall submit a Project Coordinator for Operation and Maintenance who shall be responsible for administration of the Operation and Maintenance. Settling Defendant shall submit to the State the designated Project Coordinator for Operation and Maintenance's name, contact information, and qualifications.

a.      The State retains the right to disapprove of the designated Project Coordinator for Operation and Maintenance.  If the State disapproves of the designated Project Coordinator for Operation and Maintenance, Settling Defendant shall within 14 days following the disapproval submit a different Project Coordinator for Operation and Maintenance for State approval and shall notify the State of that person's name, contact information, and qualifications.

b.      Within ten days of the State's approval of the Project Coordinator for Operation and Maintenance, Settling Defendant shall be responsible for performance of the Operation and Maintenance as set forth in Appendix D, and the Project Coordinator for Operation and Maintenance shall be present on Site or readily available during such performance.

c.      Receipt by the Project Coordinator for Operation and Maintenance of any notice or communication from the State relating to this Consent Decree or the Operation and Maintenance shall constitute receipt by Settling Defendant.

20.     Settling Defendant shall have the right, subject to Paragraph 19, to change its designated Project Coordinator.  Settling Defendant shall notify the State 14 days before such a change is made, including the name and qualifications of the proposed new Project Coordinator. The initial notification may be made orally, but shall be promptly followed by a written notice.

IX.     DESIGNATION AND AUTHORITY OF STATE PROJECT MANAGER

21.     Designation of and Authority of State Project Manager.  The State has designated John Schmeltzer of the Vermont Department of Environmental Conservation, Site Management

10

Section as the State Project Manager.  The State Project Manager shall be responsible for overseeing Settling Defendant's performance of Operation and Maintenance as set forth in Section VIII.  Absence of the State Project Manager from the Site shall not be cause for stoppage of performance of Operation and Maintenance unless specifically directed by the State Project Manager.  The State shall have the sole right to change its designated State Project Manager without consultation with the Settling Defendant.  If the State Project Manager is changed Settling Defendant shall be notified in writing.

## X.   ACCESS AND INSTITUTIONAL CONTROLS

22.   If the Site, or any other real property where access or land/water use restrictions are needed, is owned or controlled by Settling Defendant:

a.   Settling Defendant shall, commencing on the date of lodging of the Consent Decree, provide the United States, the State, the G-I Trustee, and their representatives, contractors, and subcontractors, with access at all reasonable times to the Site, or such other real property, to conduct any activity regarding the Consent Decree including, but not limited to, the following activities:

(1)   Monitoring the Operation and Maintenance;

(2)   Verifying any data or information submitted to the United States or the State;

(3)   Conducting investigations regarding contamination at or near the Site;

(4)   Obtaining samples;

(5)   Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendant or their agents;

(6)   Assessing the need for, planning, or implementing additional response actions at or near the Site;

(7)   Assessing Settling Defendant's compliance with the Consent Decree;

(8)   Determining whether the Site or other real property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Consent Decree; and

(9)   Implementing, monitoring, maintaining, reporting on, and enforcing any Institutional Controls.

b.   commencing on the date of lodging of the Consent Decree, Settling Defendant shall not use the Site, or such other real property, in any manner that EPA or the State determines will pose an unacceptable risk to human health or to the environment due to exposure

11

to Waste Material or interfere with or adversely affect the implementation, integrity, or protectiveness of the past and/or future response actions or increase the response action costs. The restrictions, and related obligations, shall include, but not be limited to:

(1)     taking reasonable steps to prohibit public access to the Site or such other property, including restricting the public from entering for purposes of mineral collecting, hunting, hiking, ATV riding, snowmobiling, snowboarding, skiing or any other recreational activity or for any other reason, except that Settling Defendant may allow access to the Site for (i) public or private research and education that is conducted in accordance with a health and safety plan that complies with 29 C.F.R. 1910.120 and for which prior written approval has been obtained from the State Project Manager, and (ii) Lenard P. Prive to use any property that he conveys to VAG after entry of this Consent Decree for purposes consistent with his existing use, which include recreational activities;

(2)     posting the Site with "No Trespassing" signs and taking all necessary legal steps to ensure that access to the Site has been limited until otherwise directed by the State;

(3)     prohibiting the occupation of any buildings or structures within the fenced area of the Site and prohibiting the demolition, recycling, or scrap of any building or structure within the fenced area of the Site without a work plan approved by the State;

(4)     prohibiting the off-site transport, sale, or use of the Waste Material, including mine tailing and crushed and blasted stone/rock from the Site;

(5)     not undertaking and restricting any activities that would interfere with or compromise the integrity of the land that is subject to response actions. Prohibited activities include construction of buildings or facilities, drilling drinking water well(s), and any use or disturbance of the groundwater. Construction and/or disturbance is prohibited on the Site without prior written approval of the State;

(6)     undertaking of  any activities at the Site must comply with applicable federal, state, and local laws and regulations. This includes applicable health and safety requirements for all workers; and

(7)     with respect to tree harvesting, including timber, non-timber, and sugar harvesting, the following additional restrictions apply:

(i)     The party performing the tree harvesting shall hire an environmental consultant qualified with monitoring and mitigating asbestos hazards. The environmental consultant shall work with the consulting forester and party performing the tree harvesting to develop a plan that addresses worker

12

safety and steps taken to prevent the spread of contamination through airborne or erosion transport and the transport of the harvest to offsite locations.

(ii)    The tree harvesting plan must be submitted to the State Project Manager.  The tree harvesting plan must be reviewed and approved by the State Project Manager, after consultation with the Vermont Department of Forests, Parks and Recreation.  All timber harvesting must comply with the Acceptable Management Practices (AMPs) and the acceptable standards for forest management as set forth by the Department of Forests, Parks and Recreation;

(iii)    No timber harvesting activities may occur unless the ground is frozen and adequate snow cover is on the ground so the soil is not exposed and is not disturbed by harvesting activities; and

(iv)    Buyers of wood products originating from the Site must be notified about the exposure potential.  Buyers include receiving yards, saw mills, biomass facilities, and individuals.  A copy of these notifications must be sent to the State Project Manager.

c.    Settling Defendant shall:

(1)    execute and record in the Recorder's Office in the Towns of Eden and Lowell, Vermont Proprietary Controls that: (i) grant a right of access to conduct any activity regarding the Consent Decree including, but not limited to, those activities listed in Paragraph 22.a; and (ii) grant the right to enforce the land/water use restrictions set forth in Paragraph 22.b, including, but not limited to, the specific restrictions listed therein, as further specified in this Paragraph 22.c. The Proprietary Controls shall be granted to one or more of the following persons, as determined by the State: (i) the State and its representatives; (ii) the G-I Trustee; and/or (iii) other appropriate grantees.  The Proprietary Controls shall include a designation that EPA (and/or the State as appropriate) is a third-party beneficiary, allowing EPA to maintain the right to enforce the Proprietary Controls without acquiring an interest in real property.

(2)    within 30 days after the Effective Date, submit to the State for review and approval regarding such real property: (i) draft Proprietary Controls that are enforceable under state law; and (ii) a current title insurance commitment or other evidence of title acceptable to the State, that shows title to the land affected by the Proprietary Controls to be free and clear of all prior liens and encumbrances (except when the State waives the release or subordination of such prior liens or encumbrances or when, despite best efforts, Settling Defendant is unable to obtain release or subordination of such prior liens or encumbrances).

13

(3)     within 15 days after the State's approval and acceptance of the Proprietary Controls and the title evidence, update the title search and, if it is determined that nothing has occurred since the effective date of the commitment, or other title evidence, to affect the title adversely, record the Proprietary Controls with the appropriate land records office.  Within 30 days after recording the Proprietary Controls, Settling Defendant shall provide the State with a final title insurance policy, or other final evidence of title acceptable to the State, and a certified copy of the original recorded Proprietary Controls showing the clerk's recording stamps.

23.     Until Settling Defendant has met the requirements of Section VIII (Operation and Maintenance) and Section VII (Reimbursement of Response Costs), Settling Defendant agrees to: (i) comply with all requirements necessary to maintain its corporate existence in good standing, including but not limited to filing any reports and paying any fees with the State or other authorities to maintain Settling Defendant's corporate status in good standing, and (ii) pay all federal, state and/or local taxes assessed on the Property.

24.     The State and the United States shall not be responsible for any harm to Settling Defendant or other person arising out of or resulting from any act or omission by Settling Defendant or other person in the course of a visit to the Site.

## XI.     FAILURE TO COMPLY WITH CONSENT DECREE

25.     Stipulated Penalties.

a.      If any amounts due under Section VII are not paid by the required due date, Settling Defendant shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, in addition to the Interest, $500 per violation per day that such payment is late.

b.      If Settling Defendant does not comply with the obligations set forth in Section VIII (Operation and Maintenance), Settling Defendant shall be in violation of the Consent Decree and shall pay, as a stipulated penalty $500 per violation per day of such noncompliance.

c.      If Settling Defendant does not comply with any other non-payment obligation set forth in the Consent Decree, including but not limited to obligations set forth in Sections VI (Confession and Satisfaction of Judgment) and XI (Access and Institutional Controls), Settling Defendant shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, $250 per violation per day of such noncompliance.

d.      In the event Settling Defendant believes that it will be unable to comply with any obligations under this Decree due to insufficient financial resources and/or unforeseen or unusual Operation and Maintenance requirements necessitated by a severe weather event, Settling Defendant may submit a written notification of such circumstances to EPA and the State along with a request for a reduction or waiver of penalties.  The United States and the State shall provide

14

a written response to Settling Defendant. If Settling Defendant is not satisfied with the United States' and/or State's position set forth in the written response(s) and requests a meeting, an EPA management official at a Branch Chief level or higher and/or State management official at the Section Chief level or higher, shall meet with Settling Defendant, review the concerns raised, and make a determination for the respective agency.

     e.    EPA or the State, in exercising their discretion as to whether to assess penalties or seek relief for breach of this Consent Decree, shall consider (1) Settling Defendant's financial situation at the time of Settling Defendant's failure to comply with this Consent Decree, and (2) any unforeseen and unusual Operation and Maintenance activities necessitated by a severe weather event. The governments' consideration of these factors shall not be subject to judicial review.

     26.    Payments of stipulated penalties under Paragraph 25(a)-(c) shall be divided between EPA and the State with 50% to EPA and 50% to the State.

     27.    Stipulated penalties are due and payable within 30 days of the date of the demand for payment of the penalties by EPA or the State.

     28.    All payments to EPA under this Section shall be identified as "stipulated penalties" and shall be made by certified or cashier's check made payable to "EPA Hazardous Substance Superfund" or by wire transfer. The check, or a letter accompanying the check, shall reference the name and address of the party making payment, the Site name, the EPA Region and Site/Spill ID # 01ED, and DOJ Case #90-11-3-07425/3, and shall be sent to:

               Regular Mail:
               U.S. Environmental Protection Agency
               Superfund Payments
               Cincinnati Finance Center
               PO Box 979076
               St. Louis, MO  63197-9000

               Overnight Mail:
               U.S. Bank
               1005 Convention Plaza
               Mail Station SL-MO-C2-GL
               St. Louis, MO  63101
               314-418-4087

               Wire transfers should be sent to:
               Federal Reserve Bank of New York
               ABA: 021030004
               Account Number: 68010727
               33 Liberty Street
               New York, NY  10045

Field Tag 4200 of the Fedwire message should read:
"D 68010727 Environmental Protection Agency"

29.    All payments to the State under this Section shall be identified as "stipulated penalties" and shall be made by official bank check made payable to "State of Vermont – Environmental Cleanup Fund," referencing the name and address of the party making the payment, and the Site No. 1995-1825. The check shall be sent to:

John Schmeltzer, Environmental Analyst
Vermont Agency of Natural Resources Department of Environmental Conservation
Waste Management and Prevention Division
1 National Life Dr - Davis 1
Montpelier, VT 05620-3704

30.    At the time of each payment, Settling Defendant shall send notice that payment has been made to EPA and DOJ in accordance with Section XVIII (Notices and Submissions). The Settling Defendant shall also send such notice to the Regional Financial Management Officer and to EPA's Cincinnati Finance Center at the addresses specified below.  Such notice shall reference the Site/Spill ID# 01ED and the DOJ Case # 90-11-3-07425/3.

As to the Regional Financial Management Officer:

Shannon Schofield, Regional Financial Management Officer
U.S. EPA Region 1
Five Post Office Square, Suite 100
Mailcode: OARM16-1
Boston, MA  02109-3912

As to EPA's Cincinnati Finance Center:

U. S. Environmental Protection Agency
Cincinnati Finance Center
26 Martin Luther King Dr.
Cincinnati, Ohio 45268
Email: acctsreceivable.cinwd@epa.gov

31.    Penalties shall accrue as provided in this Section regardless of whether EPA or the State has notified Settling Defendant of the violation or made a demand for payment.

32.    All penalties shall begin to accrue on the day after payment or performance is due or the day a violation occurs, and shall continue to accrue through the date of payment or the final day of correction of the noncompliance or completion of the activity.

33.     Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

34.     If the United States or the State brings an action to enforce this Consent Decree, Settling Defendant shall reimburse the United States and/or the State for all costs of such action, including but not limited to costs of attorney time.

35.     Payments made under this Section shall be in addition to any other remedies or sanctions available to the United States or the State by virtue of Settling Defendant's failure to comply with the requirements of this Consent Decree.

36.     Notwithstanding any other provision of this Section, the United States or the State may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree. The United States and the State may only waive that portion of the stipulated penalties that would be paid to it and do not have the discretion to waive the portion of the stipulated penalties that is payable to the other. Payment of stipulated penalties shall not excuse Settling Defendant from payment as required by Section VI (Confession and Satisfaction of Judgment), Section VII (Reimbursement of Response Costs), or from performance of any other requirements of this Consent Decree.

## XII.    CERTIFICATION

37.     Settling Defendant certifies that, to the best of its knowledge and belief, after thorough inquiry:

a.     it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, reports, or information relating to its potential liability regarding the Site since notification of potential liability by EPA or the State,

b.     it has fully complied with any and all EPA or State requests for documents or information regarding the Site and its financial circumstances;

c.     it has submitted to EPA Financial Information that fairly, accurately, and materially sets forth its financial circumstances, and that those circumstances have not materially changed between the time the Financial Information was submitted to EPA and the time Settling Defendant executed this Consent Decree; and

d.     it has fully disclosed the existence of any Insurance Policies, or evidence of such policies, that may be applicable to claims relating to cleanup of the Site, that it continues to hold all rights under the Insurance Policies, and that it has not and will not settle, compromise, or assign any insurance rights or the assigned proceeds from any of its rights provided in the Insurance Policies prior to the Effective Date of this Consent Decree.

XIII.   COVENANTS NOT TO SUE BY UNITED STATES AND THE STATE

38.   Covenants Not to Sue by United States.  Except as specifically provided in Section XIV (Reservation of Rights by United States and the State), the United States covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 or 107(a) of CERCLA, 42 U.S.C. §§ 9606 or 9607(a), with regard to the Site.  With respect to present and future liability, this covenant shall take effect upon receipt by EPA of all amounts required by Section VI (Confession and Satisfaction of Judgment), Section VII (Reimbursement of Response Costs), and any amount due under Section XI (Failure to Comply with Consent Decree).  This covenant not to sue is conditioned upon the satisfactory performance by Settling Defendant of its obligations under this Consent Decree.  This covenant not to sue is also conditioned upon the veracity and completeness of the Financial Information provided to EPA by Settling Defendant. If the Financial Information is subsequently determined by EPA to be false or inaccurate in any material respect, Settling Defendant shall forfeit all payments made pursuant to this Consent Decree and this covenant not to sue and the contribution protection in Paragraph 49 shall be null and void.  Such forfeiture shall not constitute liquidated damages and shall not in any way foreclose the United States' right to pursue any other causes of action arising from Settling Defendant's false or materially inaccurate information.  This covenant not to sue extends only to Settling Defendant and does not extend to any other person.

39.   Covenants Not to Sue by the State.  Except as specifically provided in Section XIV (Reservation of Rights by United States and the State), the State covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 or 107(a) of CERCLA, 42 U.S.C. §§ 9606 or 9607(a), and 10 V.S.A. § 6615 with regard to the Site.  With respect to present and future liability, this covenant shall take effect upon receipt by the State of all amounts required by Section VI (Confession and Satisfaction of Judgment), Section VII (Reimbursement of Response Costs), and any amount due under Section XI (Failure to Comply with Consent Decree).  This covenant not to sue is conditioned upon the satisfactory performance by Settling Defendant of its obligations under this Consent Decree.  This covenant not to sue is also conditioned upon the veracity and completeness of the Financial Information provided to EPA by Settling Defendant.  If the Financial Information is subsequently determined by EPA or the State to be false or inaccurate in any material respect, Settling Defendant shall forfeit all payments made pursuant to this Consent Decree and this covenant not to sue and the contribution protection in Paragraph 49 shall be null and void.  Such forfeiture shall not constitute liquidated damages and shall not in any way foreclose the State's right to pursue any other causes of action arising from Settling Defendant's false or materially inaccurate information.  This covenant not to sue extends only to Settling Defendant and does not extend to any other person.

XIV.   RESERVATION OF RIGHTS BY UNITED STATES AND THE STATE

40.   Reservation of Rights by United States against Settling Defendant.  The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within the Covenant Not to Sue by

18

United States in Paragraph 38.  Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendant with respect to:

        a.     liability for failure of Settling Defendant to meet a requirement of this Consent Decree;

        b.     criminal liability;

        c.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

        d.     liability based on the operation of the Site by Settling Defendant when such operation commences after signature of this Consent Decree by Settling Defendant and does not arise solely from Settling Defendant's actions performed in accordance with Section VIII (Operation and Maintenance);

        e.     liability based on Settling Defendant's transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of hazardous substances at or in connection with the Site, other than as specifically provided for in Section VIII (Operation and Maintenance), or otherwise ordered by EPA or the State, after signature of this Consent Decree by Settling Defendant;

        f.     liability for violations of federal or state law that occur during or after Settling Defendant's performance of Operation and Maintenance in accordance with Section VIII; and

        g.     liability arising from the past, present, or future disposal, release or threat of release of a hazardous substance, pollutant, or contaminant outside of the Site.

    41.    <u>Reservation of Rights by the State against Settling Defendant</u>.  The State reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within the Covenant Not to Sue by the State in Paragraph 39. Notwithstanding any other provision of this Consent Decree the State reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to:

        a.     liability for failure of Settling Defendant to meet a requirement of this Consent Decree, including but not limited to, the issuance of orders pursuant to 10 V.S.A. §§ 1272, 1283, 6610a, 6615, 6615b, 8003, and 8221, to prohibit or enjoin Settling Defendant from undertaking activities which might interfere with or adversely affect the protectiveness of the response actions;

        b.     criminal liability;

        c.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

      d.     liability based on the operation of the Site by Settling Defendant when such operation commences after signature of this Consent Decree by Settling Defendant and does not arise solely from Settling Defendant's actions performed in accordance with Section VIII (Operation and Maintenance);

      e.     liability based on Settling Defendant's transportation, treatment, storage, or disposal, or arraignment for transportation, treatment, storage, or disposal of hazardous substances at or in connection with the Site, other than as specifically provided for in Section VIII (Operation and Maintenance) or otherwise ordered by EPA or the State, after signature of this Consent Decree by Settling Defendant; and

      f.     liability for violations of federal or state law that occur during or after Settling Defendant's performance of Operation and Maintenance in accordance with Section VIII; and

      g.     liability arising from the past, present, or future disposal, release or threat of release of a hazardous substance, pollutant, or contaminant outside of the Site.

42.     Notwithstanding any other provision of this Consent Decree, the United States and State reserve, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the Financial Information provided by Settling Defendant, or the financial certification made by Settling Defendant in Paragraph 37.c, is false or, in any material respect, inaccurate.

43.     Nothing in this Consent Decree is intended to be nor shall it be construed as a release, covenant not to sue, or compromise of any claim or cause of action, administrative or judicial, civil or criminal, past or future, in law or in equity, which the United States and/or the State may have against any person, firm, corporation or other entity not a signatory to this Consent Decree. Nothing in this Consent Decree is intended to be a waiver of the sovereign immunity of the United States or the State.

## XV.   COVENANT NOT TO SUE BY SETTLING DEFENDANT

44.     Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States or the State, or their contractors or employees, with respect to the Site or this Consent Decree, including but not limited to:

      a.     any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

      b.     any claim arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Vermont Constitution, the Tucker

20

Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, State law, or at common law; or

        c.    any claim against the United States or the State pursuant to Sections 107 or 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613, or pursuant to state law relating to the Site.

     45.    Except as provided in Paragraph 51, Settling Defendant's covenants not to sue shall not apply in the event the United States or the State brings a cause of action or issues an order pursuant to the reservations set forth in Section XIV (Reservation of Rights by the United States and the State), but only to the extent that Settling Defendant's claim arises from the same response action or response costs that the United States or the State is seeking pursuant to the applicable reservation.

     46.    Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. 300.700(d).

     47.    Settling Defendant agrees not to assert any CERCLA claims (including but not limited to claims or causes of action under Sections 107(a) or 113 of CERCLA) or claims under state law that they may have for all matters relating to the Site against any other person. This waiver shall not apply with respect to (i) any defense, claim, or cause of action that Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against Settling Defendants, and (ii) any claim filed against insurance carriers to recover insurance proceeds consistent with this Consent Decree.

## XVI.  EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

     48.    Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Consent Decree may have under applicable law. The United States and the State expressly reserve any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which they may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto. Nothing in this Consent Decree diminishes the right of the United States and the State, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

     49.    EPA, the State, and Settling Defendant agree, and by entering this Consent Decree this Court finds, that this settlement constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), or as may be otherwise provided by law, for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are

all response actions taken or to be taken, all response costs, incurred or to be incurred, at or in connection with the Site, by the United States, the State, or any other person, including the G-1 Trustee; provided, however, that if the United States or the State exercises rights under the reservations in Section XIV, other than in Paragraphs 40.a, 40.b, 41.a, and 41.b the "matters addressed" in this Consent Decree will no longer include those response costs or response actions that are within the scope of the exercised reservation.

50.     Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify EPA, DOJ, and the State in writing no later than 60 days prior to the initiation of such suit or claim. Settling Defendant also shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify EPA, DOJ, and the State in writing within 10 days of service of the complaint or claim upon it. In addition, Settling Defendant shall notify EPA, DOJ, and the State within 10 days of service or receipt of any Motion for Summary Judgment, and within 10 days of receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

51.     In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs, or other relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenants Not to Sue by Plaintiffs set forth in Section XIII.

## XVII.  RETENTION OF RECORDS

52.     Until 10 years after the Effective Date, Settling Defendant shall preserve and retain all records now in its possession or control, or which come into its possession or control, that relate in any manner to response actions taken at the Site, to Insurance Policies, or to the liability of any person under CERCLA with respect to the Site, regardless of any corporate retention policy to the contrary.

53.     After the conclusion of the 10 year document retention period, Settling Defendant shall notify the United States and the State at least 90 days prior to the destruction of any such records, and, upon request by the United States or the State, Settling Defendant shall deliver any such records to the requesting party. Settling Defendant may assert that certain records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendant asserts such a privilege, Settling Defendant shall provide EPA and the State with the following: 1) the title of the record; 2) the date of the record; 3) the name and title of the author of the record; 4) the name and title of each addressee and recipient; 5) a description of the subject of the record; and 6) the privilege asserted. However, no records created or generated pursuant to the requirements of this or any other settlement with the United States or the State shall be withheld on the grounds that they are privileged. If a claim of privilege applies only to a

portion of a record, the record shall be provided to the United States and the State in redacted form to mask the privileged portion only. Settling Defendant shall retain all records that they claim to be privileged until the United States and the State have had an opportunity to dispute the privilege claim and any such dispute has been resolved in Settling Defendant's favor. Settling Defendant and the United States and the State shall confer in good faith before filing with the Court pursuant to Section XIX (Retention of Jurisdiction) for an order resolving the privilege dispute.

## XVIII. NOTICES AND SUBMISSIONS

54.    Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, DOJ, the State, and Settling Defendant, respectively.

As to the United States:

As to DOJ:
Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice (DJ # 90-11-3-07425/3)
P.O. Box 7611
Washington, D.C. 20044-7611

As to EPA:
Office Director
Office of Site Remediation and Restoration
US EPA Region 1
Five Post Office Square, Suite 100 (OSRR07-5)
Boston, MA 02109-3912

As to the State of Vermont:

John Schmeltzer, Environmental Analyst
Vermont Agency of Natural Resources Department of Environmental Conservation
Waste Management and Prevention Division
1 National Life Dr - Davis 1
Montpelier, VT 05620-3704

As to Settling Defendant:

Edward French, Esq.
Stackpole & French

23

255 Maple Street
Stowe, VT 05672

Howard Manosh
Vermont Asbestos Group, Inc.
120 Northgate Plaza
Morrisville, VT 05661

## XIX.   RETENTION OF JURISDICTION

55.     This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XX.   INTEGRATION/APPENDICES

56.     This Consent Decree and its appendices constitute the final, complete, and exclusive Consent Decree and understanding between the Parties with respect to the settlement embodied in this Consent Decree.  The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.  The following appendices are attached to and incorporated into this Consent Decree:

    a.  "Appendix A" is a map of the Site.

    b.  "Appendix B" is an index of Financial Information.

    c.  "Appendix C" is a non-exhaustive list of Insurance Policies within the meaning of Paragraph 4.q. of this Consent Decree.

    d. "Appendix D" is the Statement of Operation and Maintenance.

## XXI.   MODIFICATION

57.     Except as provided in Appendix D (Statement of Operation and Maintenance), material modifications to this Consent Decree shall be in writing, signed by the United States, the State, and Settling Defendant, and shall be effective upon approval by the Court.  Except as provided in Appendix D, non-material modifications to this Consent Decree shall be in writing and shall be effective when signed by duly authorized representatives of the United States, the State, and Settling Defendant.

58.     Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise, or approve modifications to this Consent Decree.

24

## XXII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

59.   This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. The State may withdraw or withhold its consent to the entry of this Consent Decree if comments received disclose facts or considerations which show that the Consent Decree is inconsistent with State law or CERCLA.  The United States reserves the right to challenge in court the State withdrawal from the Consent Decree, including the right to argue that the requirements of State law have been waived, pre-empted or otherwise rendered inapplicable by federal law.  The State reserves the right to oppose the United States' position taken in opposition to the proposed withdrawal.  In addition, in the event of the United States' withdrawal from this Consent Decree, the State reserves its right to withdraw from this Consent Decree.  Settling Defendant consents to the entry of this Consent Decree without further notice.

60.   If for any reason this Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the sole discretion of any party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

## XXIII.  SIGNATORIES/SERVICE

61.   The undersigned representative of the Parties each certify that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally the Party to this document.

62.   Settling Defendant agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States or the State has notified Settling Defendant in writing that it no longer supports entry of the Consent Decree.

63.   Settling Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on its behalf with respect to all matters arising under or relating to this Consent Decree.  Settling Defendant agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including service of a summons.

## XXIV.  FINAL JUDGMENT

64.   Upon approval and entry of this Consent Decree by the Court, this Consent Decree constitutes the final judgment between the Parties.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

25

SO ORDERED THIS $\underline{16}$ DAY OF $\underline{\phantom{October}}$, 2013.

/s/ William K. Sessions III

United States District Judge

JUDGMENT ENTERED ON DOCKET
DATE:   10/16/2013

26

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Vermont Asbestos Group, Inc.*, relating to the Vermont Asbestos Group Mine Site.

Date: 8/29/13

FOR THE UNITED STATES OF AMERICA

ELLEN M. MAHAN
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC  20044-7611

DAVID L. GORDON
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
(202) 514-3659

TRISTRAM J. COFFIN
United States Attorney

JAMES J. GELBER
Assistant United States Attorney
District of Vermont
P.O. Box 570
Burlington, Vermont 05402-0570

Of Counsel:
SARAH MEEKS
Enforcement Counsel, Region 1
U.S. Environmental Protection Agency
5 Post Office Square – Suite 100
Boston, MA 02109-3912

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Vermont Asbestos Group, Inc.*, relating to the Vermont Asbestos Group Mine Site.

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

Date: 8/21/13

H. CURTIS SPALDING
Regional Administrator, Region 1
U.S. Environmental Protection Agency
5 Post Office Square – Suite 100
Boston, MA 02109-3912

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Vermont Asbestos Group, Inc.*, relating to the Vermont Asbestos Group Mine Site.

FOR THE STATE OF VERMONT ON BEHALF OF THE VERMONT AGENCY OF NATURAL RESOURCES

STATE OF VERMONT
WILLIAM H. SORRELL
ATTORNEY GENERAL

Date: 8/30/2013

THEA SCHWARTZ
Assistant Attorney General
109 State Street
Montpelier, VT 05609-1001
802-828-3186

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Vermont Asbestos Group, Inc.*, relating to the Vermont Asbestos Group Mine Site.

FOR DEFENDANT
VERMONT ASBESTOS GROUP

Date: *August 8, 2013*

*Howard A Mamosh*

Authorized to Accept Service on
behalf of Above-signed Party:

Name (print): *Howard A. Mamosh*

Title: *President*

Address: *120 Northgate Plaza*
*Morrisville, Vermont*
*05661*

Phone: *802 - 888 - 5722*

Email: *None*